UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SELECTION HEALTHCARE SERVICES, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1936** |
| **BLIANT SPECIALTY HOSPITAL, LLC, ET AL** | **SECTION "B"(2)** |

ORDER AND REASONS

Before the Court is plaintiff's unopposed motion for default judgment (Rec. Doc. 19). For the following reasons,

**IT IS HEREBY ORDERED** that the motion for default judgment (Rec. Doc. 19) is **GRANTED**.

I.   **FACTS AND PROCEDURAL HISTORY**

This action was filed on October 21, 2021 against defendants Bliant Specialty Hospital, LLC ("Bliant") and Juanita B. Bonds ("Bonds") (hereinafter "defendants") for violations of Louisiana's Unfair Trade Practices Act, La R.S. §§ 51:631 *et seq.* ("LUTPA") and for breach of contract. Rec. Doc. 1. Plaintiff alleges that it provided defendants with over $100,000.00 of contractually agreed upon medical staffing services, and for nearly two years, defendants have consistently failed to pay invoices for services. *Id.*

The Clerk of Court record indicates defendant Bonds was served via certified mail with the summons and complaint on December 21, 2021. Rec. Doc. 13. The record further indicates defendant Bliant

1

was served through the Louisiana Secretary of State on December 20, 2021. Rec. Doc. 9. Defendants' responses were due within 21 days of service, on January 11, 2022, and January 10, 2022, respectively.

To date, defendants have not filed an answer or responsive pleadings in this record. On plaintiff's motion, the Clerk of Court entered a default against defendants on February 9, 2022. Rec. Doc. 15. Consequently, plaintiffs filed the instant motion for entry of a default judgment on March 21, 2022.

## II. LAW AND ANALYSIS

### A. Default Judgment

Federal Rule of Civil Procedure 55 governs the entry of defaults and default judgments. That rule states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. Proc. 55. The Fifth Circuit has also explained that there are three steps for obtaining a default judgment: (1) default; (2) entry of default; and (3) default judgment. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); *Bradford v. Telerecovery*, No. CV 16-2933, 2017 WL 2573947 (E.D. La. June 14, 2017). A default occurs when "a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co.,* 84 F.3d at 141.  The clerk

2

will then enter an entry of default "when the default is established by affidavit or otherwise." *Id.* After the clerk's entry of default, "a plaintiff may apply for a judgment based on such default. This is a default judgment." *Id.* Default judgements are "a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (quoting *Sun Bank of Ocala v. Pelican Homestead and Savings Ass'n.*, 874 F.2d 274, 276 (5th Cir. 1989)).

### B. Jurisdiction to Enter a Default Judgment

As a preliminary matter, the Court considers whether it has subject matter jurisdiction over this action and personal jurisdiction over Bliant and Bonds. *See Bradford v. Telerecovery*, No. CV 16-2933, 2017 WL 2573947 (E.D. La. June 14, 2017) (establishing the court had personal and subject matter jurisdiction over the defendant prior to determining whether entry of default judgment was proper.)

#### 1. Subject Matter Jurisdiction

The Court has subject matter jurisdiction on the basis diversity jurisdiction. *See* Rec. Doc. 1. Plaintiff Selection is a limited liability company, organized pursuant to Mississippi law. Rec. Doc. 1 at pg. 2. All members/owners of Selection are citizens of Mississippi. *Id.* Thus, plaintiff is a citizen of Mississippi. *See Greenwich Ins. Co. v. Capsco Indus., Inc.*, 934 F.3d 419, 422 (5th Cir. 2019) (citing *Settlement Funding, L.L.C. v. Rapid*

3

*Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017)) ("[t]he citizenship of an LLC is determined by the citizenship of each of its members.") Likewise, defendant Bliant is a limited liability company, organized under Louisiana law. *Id.* at pgs. 2-3. Defendant Bonds is the sole owner and member of Bliant, and plaintiff has alleged Bonds is a Louisiana citizen, domiciled in Orleans Parish.[1] *Id.* Thus, Bliant and Bonds are Louisiana citizens. *See Greenwich*, 934 F.3d at 422; *MidCap Media Fin. v. Pathway Data, Inc.*, 929 F3d 310, 313 (5th Cir. 2019) (quoting *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)) ("For individuals, 'citizenship has the same meaning as domicile,' and 'the place of residence is prima facie the domicile.'"). Because plaintiff Selection and defendants Bliant and Bonds are diverse parties and plaintiff is seeking more than the jurisdictional amount of $75,000.00, the Court has diversity jurisdiction. Plaintiff also brings a claim under LUTPA. See Rec. Doc. 1. Because the plaintiff's state law claim arises out of the same case and controversy, the Court has supplemental jurisdiction. *See* 28 U.S.C. §1367(a).

**2. Personal Jurisdiction**

In two seminal decisions, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2847, 2853-54 (2011), and *Daimler AG v.*

---

[1] Although plaintiff has alleged Bonds is domiciled in Louisiana, the record indicates that Bonds was served at her "new" residence in Georgia. Rec. Doc. 13; Rec. Doc. 19. Assuming *arguendo* that Bonds is now domiciled in Georgia and not Louisiana, the court nevertheless maintains diversity jurisdiction over this matter because the parties remain diverse. If Bonds is domiciled in Georgia, she is a Georgia citizen, and Bliant would also be deemed a Georgia citizen given the status of its sole member, Bonds.

4

*Bauman*, 134 S. Ct. 746, 757 (2014), the United States Supreme Court held that the exercise of general personal jurisdiction over a corporation is justified when the corporation is either incorporated in the forum state or has its principal place of business there. The decisions in *Daimler* and *Goodyear* also apply equally to limited liability corporations. *See Daimler*, 134 S. Ct. at 761 (looking to MBUSA's place of incorporation and principal place of business to determine whether general jurisdiction existed, even though MBUSA was an LLC.)

Here, defendant Bliant is a limited liability company with its principal place of business in New Orleans, Louisiana. Rec. Doc. 1. At pgs. 2-3. Therefore, Bliant is at home in Louisiana and this Court has general personal jurisdiction over this defendant. Plaintiff has also stated that defendant Bonds is domiciled in Louisiana, and thus it would seem the Court also has general personal jurisdiction over her. *See Goodyear*, 564 U.S. at 924; *see Daimler*, 571 U.S. 117, 137 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile….") Defendants are therefore subject to the general personal jurisdiction of the state of Louisiana and this Court.

However, for the sake of being thorough, the Court must acknowledge the declarations in the record wherein plaintiff's counsel stated that Bonds was served at her "new" residential address in Georgia. Rec. Doc. 13; Rec. Doc. 19. Given the chance

that Bonds might be a citizen of Georgia, the Court must determine whether it can nevertheless exercise personal jurisdiction over her as a non-resident defendant.

A court has personal jurisdiction over a nonresident defendant when: (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Gross v. RSJ Int'l, LLC*, No. CIV.A. 11-73, 2012 WL 729955 (E.D. La. Mar. 6, 2012) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999)). Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir.1999) (citing La. R.S. § 13:3201(B)).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). A Court has

6

specific jurisdiction sufficient to establish minimum contacts when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir.2008).

Here, Bonds' activity clearly satisfies the requirement of minimum contacts with Louisiana. Not only was Bonds domiciled in Louisiana until about July 2021, when she allegedly acquired her new Georgia address,[2] but she also started a company in Louisiana, Bliant, which catered to Louisiana citizens. Further, the present litigation directly relates to Bonds' activity within Louisiana, *i.e.*, her operation of an undercapitalized business. The exercise of personal jurisdiction will also not offend traditional notions of fair play and substantial justice. Although the burden on Bonds would be high, the interest of the plaintiff and the forum state outweigh it. Selection has a greater interest in obtaining convenient and effective relief. Likewise, the forum state has a high level of interest in this case because the contract was executed in this state, the alleged unlawful acts were committed here, and Bliant is a Louisiana company organized through the

---

[2] *See* Rec. Doc. 7-1 at pg. 2.

Louisiana Secretary of State. Thus, even if Bonds is a Georgia citizen, the Court will retain personal jurisdiction over her.

### 3. Service of Process

The Court must also confirm that the defendants were properly served. For a federal court to exercise personal jurisdiction over a defendant, "the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (citing *Miss. Publ'g Corp. v. Murphee*, 326 U.S. 438, 444-45 (1946) ("[S]ervice of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.")). Consequently, absent proper service, the court lacks personal jurisdiction over the defendant, and any default judgment entered against the defendant is void. *See Rogers v. Hartford Life and Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999) ("When a district court lacks jurisdiction over a defendant because of improper service of process, the default judgment is void….")

Bliant was properly served with a summons and complaint on December 20, 2021. Rec. Doc. 9. Plaintiff perfected service by serving Bliant through the Louisiana Secretary of State in accordance with Louisiana Code of Civil Procedure articles 1266-67. *See* Fed. R. Civ. Proc. (h)(1) (allowing service on unincorporated association "in the manner prescribed by Rule

8

4(e)(1) for serving an individual"); Fed. R. Civ. Proc. 4(e)(1) (allowing service on individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.").

Likewise, Bonds was properly served on December 21, 2021, through certified mail in accordance with La. Rev. stat. § 13:3204(A). Rec. Doc. 13. Plaintiff perfected service by serving Bonds at the address listed as her Georgia residence, which is also the address of her new company, Bliant Specialty Hospital of Georgia. Therefore, service of process on defendants was proper. Having answered the questions of jurisdiction and service, the court must next address the property of entering default judgment against defendants.

C. **Entry of Default**

    **1. Plaintiff's claims against Bliant and Bonds**

Plaintiff asserts that defendants' act of not paying their invoices for the contractually agreed upon medical staffing plaintiff provided not only breached the contract between the parties, but also resulted in a violation of Louisiana's Unfair Trade Practices Act, La R.S. §§ 51:631 et seq. ("LUTPA"). Accordingly, the Court addresses each of these claims in turn.

    **a. Breach of Contract**

The contract at issue in this case has a Mississippi choice of law provision; thus, this Court sitting in diversity must apply Mississippi law to plaintiff's breach of contract claim. To prevail on a breach of contract claim, a plaintiff must prove only, by a preponderance of the evidence, that there was (1) an existing and binding contract and (2) that the defendant breached the contract. *Garth v. Curlee*, No. 1:17-CV-94-SA-DAS, 2018 WL 4571870, *9 (N.D. Miss. Sept. 24, 2018) (citing *Business Communications, Inc. v. Banks*, 90 So. 3d 1221, 1224-25 (Miss. 2012)).

Selection has properly established both elements in this case. Through the declarations attached and facts alleged, plaintiff entered a contract with Bliant to provide temporary contractor nurses and defendant failed to compensate plaintiff under the terms of the contract. Specifically, plaintiff established that it provided nurse staffing to Bliant from March 30, 2020, to May 26, 2020, and sent defendants nine invoices for payment. *See* Rec. Doc. 19-2 (Declaration of Avery Hughes); Rec. Doc. 19-3 (contract). Under the terms of the contract, Bliant was required to remit payment of each invoice within 30 days of the invoice; however, plaintiff alleges defendant has failed to make any payments. Because defendants have not filed any responsive pleadings, the facts alleged in plaintiff's complaint are deemed admitted. *See Johnson v. Coastal Priv. Prot. Sec., Inc.,* No. CV 19-12660, 2020 WL 3888286, *4 (E.D. La. July 10, 2020).

10

Accordingly, the Court finds that plaintiff has sufficiently stated a claim against Bliant for breach of contract.

### b. LUTPA Violation

A successful LUTPA claim requires a showing that the defendant engaged in conduct that "offends established public policy and...is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 405-06 (E.D. La. 2016). "Fraud, misrepresentation, deception, and similar conduct is prohibited, mere negligence is not." *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993) (citing *Marshall v. Citicorp*, 601 So.2d 669, 670 (La.App. 5 Cir.1992)). The range of prohibited practices under LUTPA is extremely narrow. *Id.* LUTPA actions require a case-by-case analysis to determine whether the subject conduct is a violation of the statute. *Id.* Additionally, LUTPA is not an alternative remedy for simple breach of contract claims. *Id.* "There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Id.* However, there is case law that actions that are in breach of a contract can have deceptive and unethical "undertones" that would allow a LUTPA claim to stand in addition to the breach of contract claims. *See Tubos de Acero de Mex. SA v. Am. Int'l Inv. Corp*, 292 F.3d 471 (5th Cir.2002); *First Am. Bankcard, Inc.*, 178 F. Supp. 3d at 406.

Selection has properly established, through the declarations attached and facts alleged, that Bliant's intentional misrepresentation of its intent to pay for the services plaintiff provided, after approving the invoices several times via email, constituted an unethical act. Additionally, plaintiff has also attached a notice from the Louisiana Attorney General to Bliant, advising the defendant to evaluate its trade practices and "cease such activity." Rec. Doc. 19-6 (Notice from Attorney General"). Plaintiff has also alleged that it sustained an ascertainable loss from Bliant's unfair trade practices, *i.e.*, the unpaid invoices. Rec. Doc. 19 at pgs. 14-15; *See* La. Rev. Stat. § 51:1409(A) ("Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages."). As stated *supra*, defendants have not filed any responsive pleadings, thus the facts alleged in plaintiff's complaint are deemed admitted. *See Johnson*, 2020 WL 3888286 at *4. Accordingly, the Court finds that Plaintiff has sufficiently stated a claim against Bliant for a violation of LUTPA.

### c. Bonds' Personal Liability for Bliant's Actions

Plaintiff seeks to hold Bonds personally liable for Bliant's actions by piercing the corporate veil. Plaintiff contends that

12

Bonds should be held personally liable for breach of contract under Mississippi law and for violations of LUTPA under Louisiana law.

In order to hold Bonds personally liable for breach of contract, plaintiff had to establish that veil piercing was appropriate under Mississippi law. "Mississippi case law generally favors maintaining corporate entities and avoiding attempts to pierce the corporate veil." *Powertrain, Inc. v. Ma*, 88 F. Supp. 3d 679, 695 (N.D. Miss. 2015), *aff'd*, 640 F. App'x 263 (5th Cir. 2016). To pierce the corporate veil, the complaining party must prove: (1) some frustration of contractual expectations; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder. *Gecko Outdoor Prod. Corp. v. Casablanca Constr. Inc.*, 250 So. 3d 508, 513 (Miss. Ct. App. 2018).

First, there was an evident frustration with contractual expectations in this case, given the defendant's failure to pay for the contractually agreed upon nursing services. Additionally, defendant flagrantly disregarded corporate formalities when they failed to file a required LLC document with the Louisiana secretary of State, causing Bliant to be labeled as a business "not in good standing for failure to file annual report." Rec. Doc. 19. Lastly, Bonds committed fraud or a similar misfeasance when she repeatedly refused to pay for services plaintiff provided. Operating a

13

business while also refusing to pay the business's debts lends support to the notion that Bliant was undercapitalized. Accordingly, the Court finds Bonds should be held personally liable for breach of contract.

Turning next to whether Bonds could be held personally liable for a violation of LUTPA, the Louisiana Supreme Court has instructed that factors to consider when determining whether to pierce the corporate veil "include, but are not limited to: 1) comingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder and director meetings." *Veterans Bros. No. 126, L.L.C. v. 7-Eleven, Inc.*, No. 16-2034, 2017 WL 345858 (E.D. La. Jan. 24, 2017) (quoting *Riggins v. Dixie Shoring Co., Inc.*, 590 So.2d 1164, 1168 (La. 1991)).

While plaintiff provided no evidentiary support for factors one, four, and five, there is clearly enough support in the record to establish factors two and three. As stated *supra*, Bonds' operation of Bliant, *i.e.*, entering contracts for medical staffing and failing to pay for the services provided, establishes Bliant was undercapitalized. Further, defendants failed to follow statutory corporate formalities when they: (1) failed to file a required LLC document with the Louisiana Secretary of State; and

14

(2) ignored the notice sent by the Louisiana Attorney General. Factors two and three weigh heavily in favor of breaching the corporate veil to hold Bonds personally liable for a violation of LUTPA.

### 2. Whether Default Judgment is appropriate

When deciding whether entry of default judgment is proper, courts weigh a series of factors:

> whether material issues of fact are at issue whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998); *Am. Contractors Indem. Co. v. Galafaro Constr., LLC*, No. CV 20-2860, 2021 WL 5230988 (E.D. La. Oct. 26, 2021) (citing *Lindsey*, 161 F.3d at 893).

Default judgment is appropriate under the *Lindsey* factors listed above. First, there are no material issues of fact in dispute because defendants' failure to respond bars them from contesting the facts that are established by plaintiff's complaint. *See Nishimatsu Const. Co. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from

15

contesting on appeal the facts thus established."). Second, defendants' failure to file responsive pleadings since service was made four months ago prejudices plaintiff's interests by halting the adversary process. *See J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) ("failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Plaintiffs'] interests."); *Taylor*, 39 F. Supp. 3d at 814. Third, the grounds for default are clearly established given that there is proof the defendants were served the complaint and failed to file an answer, and the clerk of court subsequently entered default. *See* Rec. Doc. 15. Fourth, nothing in the record suggests that defendants' default is due to a "good faith mistake or excusable neglect." Fifth, defendants' failure to file a responsive pleading or otherwise defend the instant lawsuit for more than four months mitigates the harshness of the default judgment." *Taylor v. City of Baton Rouge,* 39 F. Supp. 3d 807, 814 (M.D. La. 2014); *see also J&J Sports*, 126 F. Supp. 3d at 814. Sixth, there is presently no basis to believe that the Court would later need to set aside the default judgment. *See Taylor*, 39 F. Supp. 3d at 814; *J&J Sports*, 126 F. Supp. 3d at 814-15. Accordingly, the entry of default judgment against defendants is warranted in this case.

    D. **Damages**

Having concluded that entry of default judgment is appropriate, the only remaining issue to address is the question of damages. A court may, but is not required to, hold an evidentiary hearing to determine damages. *See* Fed. R. Civ. P. 55(b)(2)(B). Such a hearing is not necessary in this case because the declarations and invoices provided are sufficient to determine the issue of damages. Plaintiff's complaint, corresponding declarations, exhibits, and motion for default judgment establish that it is entitled to $112,259.41 for unpaid invoices. Additionally, plaintiff is entitled to finance charges and prejudgment interest as provided for in the contract, totaling $37,937.60.[3]

Plaintiff should also be awarded attorneys' fees as provided for in the contract. *Kirkland Properties, LLC v. Pillar Income Asset Mgmt., Inc.*, No. 1:19-CV-162-SA-DAS, 2021 WL 1206404 (N.D. Miss. Mar. 30, 2021) ("[U]nder Mississippi law, attorney's fees may be awarded when authorized by statute, by court order, or by contract.") Bliant agreed to pay plaintiff's reasonable attorneys' fees "for the cost of collection after 120 days" from nonpayment of the invoices. Plaintiff seeks attorneys' fees in the amount of

---

[3] Rec. Doc. 19-3 at pg. 7 ("Invoices not paid within (30) days are considered past-due and will be charged a finance charge of one and half (1.5%) percent per month on the unpaid balance (annual percentage of 18%) or the maximum interest rate allowed by law, whichever is greater."); *see also* Rec. Doc. 19-1 at pg. 12 and Rec. Doc. 22 (computation table illustrating the total amount due for each past-due).

$5,000.00. In support, plaintiff submits the declaration of Avery Hughes, attesting that plaintiff had to pay a $5,000.00 retainer fee to secure representation in this matter. Plaintiff also seeks attorneys' fees, costs, and treble damages because defendants' actions constituted unfair trade practices. *See* La. Rev. Stat. § 51:1409(A) ("If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained.") Plaintiff has established that the Attorney General did issue a notice to Bliant and Blaint continued its practice of not paying previously approved invoices. The Court finds the attorney's fees, related costs, and treble damages sought to be reasonable.

Therefore, defendant Bliant is liable to plaintiff for damages in the amount of $336,778.23 (three times the actual damages of $113,259.41), finance charges and pre-judgment interest in the amount of $37,937.60, costs and attorneys' fees in the amount of 5,000.00,[4] and post-judgment interest on all sums allowed under law accruing from the date of default judgment until paid.

---

[4] To the extent plaintiff is seeking attorneys' fees in excess of the $5,000.00 retainer, plaintiff has not provided enough information for the Court to determine that amount. Plaintiff has not provided any declaration attesting to the total amount of attorneys' fees incurred in excess of the $5,000.00 or presented the Court with any invoices showing the excess amount paid. Accordingly, if plaintiff is seeking an amount greater than retainer, it should file a motion requesting such relief and attach as exhibits any pertinent invoices and/or declarations. Once received, the Court will evaluate the reasonableness of the amounts sought.

New Orleans, Louisiana this 28th day of April, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE